UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE R. MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00665-SPM |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Maurice R. Marshall ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because the Court finds the decision denying benefits was supported by substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's applications.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2017, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since March 7, 2017, due to breathing problems, sleep apnea, asthma, and high blood pressure. (Tr. 277-86, 307). His applications were initially denied. (Tr. 131-37). On October 3, 2017, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 138-39). On June 25, 2019, the ALJ held a hearing on Plaintiff's claims. (Tr. 62-82). On September 12, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 8-25). On April 23, 2020, the Appeals Council denied Plaintiff's request for review of the decision. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the hearing before the ALJ, Plaintiff testified that he has, and takes medication for, breathing problems, high blood pressure, diabetes, muscle spasms, and depression. (Tr. 68-69). When the weather changes, he has chest problems. (Tr. 68). He uses two inhalers, which help with his breathing problems. (Tr. 68-69). He does a lot of walking during the day, but he can only walk a block or half a block even with his inhalers. (Tr. 71). He has a back brace that he uses when walking or lying down. (Tr. 70). He has pain in his right leg and toes related to his diabetes. (Tr. 73). He does not sleep well. (Tr. 73). Plaintiff's past work included working as a parking attendant, letting cars in and out of the parking lot. (Tr. 75). That job involved both sitting and standing; he walked around and checked out the cars in the parking lot to make sure everything was okay. (Tr. 77). In his Work History Report, Plaintiff described this job as that of a "cashier" and stated that the type of business was "Parking Lot." (Tr. 336). Asked to describe the job, he wrote, "monitor parking lot, count cash & complete report, deposit slips." (Tr. 340).

With regard to the medical, vocational, and other records, the Court accepts the facts as presented in the parties' respective statements of fact and responses. The Court will discuss specific parts of the record below, as needed, to address the parties' arguments.

## II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically

determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment

to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since March 7, 2017, the alleged onset date; that Plaintiff had the severe impairments of degenerative disk disease and diabetes mellitus; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in the listings. (Tr. 13-15). The ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds and can only occasionally stoop, kneel, crouch, and crawl. (Tr. 16). At Step Four, the ALJ found that Plaintiff was capable of performing his past relevant work as a cashier II (*Dictionary of Occupational Titles* ("*DOT*") No. 211.462-010). (Tr. 19). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 15, 2014, through the date of the decision. (Tr. 20).

### IV.   DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed on two related grounds. First, he argues that the ALJ failed to properly evaluate Plaintiff's RFC, in that the ALJ did not include any limitations on exposure to environmental conditions, which are required because of his asthma.

Second, he argues that a person with those alleged environmental limitations could not actually perform Plaintiff's past relevant work, at least when that past work is properly characterized.

### A.  Standard for Judicial Review

In reviewing the denial of social security benefits, "[t]he court's task is to determine whether the ALJ's decision 'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Pate-Fires*, 564 F.3d at 942 (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)); *see also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison*, 305 U.S. at 229)).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court does not "reweigh the evidence presented to the ALJ," and the court must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to

draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005))

### B.  Analysis

The Court first addresses Plaintiff's argument that the ALJ erred by not including any limitations in the RFC that address Plaintiff's asthma-related need to avoid certain environmental factors. Plaintiff emphasizes that Manual Salinas, M.D., the medical consultant who reviewed Plaintiff's medical records in August 2017, opined, *inter alia*, that due to a history of breathing problems and asthma, Plaintiff should avoid concentrated exposure to extreme cold and humidity and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr.. 115-16). Plaintiff argues that the ALJ failed to provide adequate reasons, such as a conflicting medical opinion, for omitting these limitations from the RFC, especially given that the ALJ noted generally that Dr. Salinas's opinion was persuasive and consistent with the record as a whole.

As discussed above, a claimant's RFC is "the most a claimant can do despite [his or] her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall*, 274 F.3d at 1217. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524

F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

After careful review of the entire record, although it is a somewhat close question, the Court finds substantial evidence, including medical evidence, to support the ALJ's decision not to include environmental limitations in the RFC. As the ALJ acknowledged (Tr. 14), the record certainly reflects that Plaintiff has asthma: an August 2018 pulmonary function test resulted in a diagnosis of "mild intermittent asthma, uncomplicated" (Tr. 679); asthma was frequently noted on lists of Plaintiff's problems or diagnoses (Tr. 515, 517, 547, 550, 560, 568, 679, 690, 701); it was often noted that Plaintiff had two inhalers prescribed for asthma, Ventolin and Symbicort (Tr. 516, 518, 524-25, 550, 556, 568, 647, 649, 684, 689, 693, 731, 737); and one doctor in February 2017 advised him to avoid triggers like cold, viruses, weather, fragrances, and smoke and to always have his inhaler while exercising. (Tr. 515). However, Plaintiff's treatment records and function reports contain little to no evidence that Plaintiff's asthma, when medicated, caused him any problems or limitations at all. Plaintiff visited providers on numerous occasions during the relevant time frame, but he did not report any problems that he or his providers attributed to asthma or exposure to environmental factors. At one May 2017 visit, he reported cough, dyspnea, and wheezing (Tr. 517, 520), but that visit occurred three days after he visited the emergency room for cough, cold, fever, and flu-like symptoms, and there is no indication in the notes his providers believed it was related to asthma. (Tr. 652-66). Additionally, at one September 2017 visit, he reported snoring that his provider noted might be due to sleep apnea (Tr. 711-12). At Plaintiff's other visits, he consistently denied having respiratory symptoms, including wheezing, difficulty breathing, difficulty breathing on exertion, and respiratory distress. (Tr. 514, 549, 564, 574, 674, 684, 689, 706, 711, 713, 731,

737). Additionally, his respiratory examinations consistently showed normal results, including normal respiratory effort; normal or clear breath sounds; no wheezes, rhonchi, rales, or adventitious sounds; and clear lungs. (Tr. 411, 431, 455, 515, 521, 550, 557, 657, 661, 674, 685, 690, 707, 711, 714, 732, 738). The Court further notes that in Plaintiff's function report and the function report prepared by Plaintiff's friend, no mention is made of difficulty breathing in particular weather or environmental conditions. (Tr. 325-30, 345-50).

The above objective findings with regard to Plaintiff's breathing and asthma, which were all mild or normal, combined with the fact that Plaintiff did not complain of asthma or breathing problems to his treatment providers and did not report such problems in his function reports, constitutes substantial evidence in support of the ALJ's decision not to include environmental restrictions in the RFC. *See, e.g.*, *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding that RFC assessment was supported by a lack of consistent complaints and objective symptoms); *Steed*, 524 F.3d at 876 (upholding RFC finding that was based on largely mild or normal objective findings). Although the ALJ's RFC assessment did not mirror any specific medical opinion in the record, that is not required. *See, e.g.*, *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2001) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any [of] the claimant's physicians" in determining RFC); *Dow v. Colvin*, 174 F. Supp. 3d 1074, 1079 (E.D. Mo. 2016) ("[T]he ALJ's decision does not have to mirror any particular doctor's opinion, because the RFC is based on all of the evidence in the record as a whole, including the claimant's treatment records and an assessment of the claimant's credibility."). Because the ALJ's assessment of Plaintiff's RFC falls within the available "zone of choice," the Court will not disturb it. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("[T]his Court will disturb the ALJ's decision only if it falls outside the available 'zone of choice.'").

9

Moreover, even assuming, *arguendo*, that the ALJ erred by not including in the RFC the environmental limitations endorsed by Dr. Salinas, the Court agrees with the Commissioner that the error was harmless. "To show an error was not harmless, [the plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012); *see also Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently . . . and any error by the ALJ was therefore harmless."). Here, although the ALJ did not include the alleged environmental limitations in the RFC, he *did* include them in the hypothetical question he posed to the Vocational Expert ("VE"), who testified that a person with those limitations could perform Plaintiff's past relevant work—the testimony on which the ALJ relied in finding Plaintiff not disabled.

At Step Four of the five-step disability evaluation process, the ALJ is required to evaluate whether, with his RFC, a claimant can perform his or her past relevant work. *See Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007). A claimant is not disabled if he or she can perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id*.; *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). In making this determination, the "ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [himself or] herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work." *Young v. Astrue*, 702 F.3d 489, 491

10

(8th Cir. 2013) (quoting *Nimick v. Sec'y of Health & Hum. Servs.*, 887 F.2d 864, 866 (8th Cir. 1989)). "The ALJ may discharge this duty by referring to the specific job descriptions in the *Dictionary of Occupational Titles* [(*DOT*)] that are associated with the claimant's past work." *Id.* (quoting *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999)). The ALJ may also consider a vocational expert's testimony in determining whether a claimant can perform his past work. *See Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008) (citing *Wagner*, 499 F.3d at 853-54). "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)).

At the hearing, the ALJ described to the VE a hypothetical individual of Plaintiff's age, education, work experience, and RFC, but with the additional limitations that the person "should avoid concentrated exposure to extreme cold and humidity and should avoid even moderate exposure to noxious fumes, odors, dusts and gases"—the same environmental limitations found in Dr. Salinas's opinion. (Tr. 78-79, 115-16). The VE testified that such an individual would be able to perform Plaintiff's past work as a parking lot cashier (cashier II, *DOT* No. 211.462-010). (Tr. 78-80). The ALJ relied on this testimony at Step Four to find that Plaintiff could perform his past relevant work as a parking lot cashier, as that job is generally performed. (Tr. 20).[2] In light of this testimony, even if the RFC *had* included the environmental limitations in Dr. Salinas's opinion, the ALJ's determination that Plaintiff could perform his past relevant work as a parking lot cashier,

---

[2] As Plaintiff appears to acknowledge, this testimony is consistent with the information in the *DOT* and its companion volume, the *Selected Characteristics of Occupations* ("*SCO*"), which provides supplemental information on all occupations in the *DOT*. As Plaintiff acknowledges, the cashier II job falls under Guide for Occupational Exploration 07.03.01, and thus has no environmental restrictions. *DOT* No. 211.462-010 Cashier II, 1991 WL 671840 (4th ed. 1991).

as that job is generally performed, would have been the same. Thus, the error in the RFC, if any, did not affect the ALJ's Step Four finding that Plaintiff was not disabled, and it was harmless.

Although it is not entirely clear, Plaintiff appears to suggest that the alleged error in omitting environmental limitations from the RFC was not harmless because, had Plaintiff been limited to light work with a provision that he must avoid concentrated exposure to pulmonary irritants, a finding of "disabled" would have been required as of Plaintiff's fifty-fifth birthday under the grids. This argument is unpersuasive. "The grids are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy*, 648 F.3d at 613 (citing 20 C.F.R. pt. 404, subpt. P, app. 2). "The grids come into play at step five of the analysis, where 'the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). It is well established that where, as here, the ALJ finds a claimant capable of performing his past relevant work at Step Four, the ALJ need not apply the grids. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[T]he ALJ clearly determined that Hepp was not disabled at step four, and the Medical-Vocation Guidelines are applied only at step five. Because he determined that Hepp was not disabled at step four, the ALJ did not need to reach step five."); *Brinegar v. Barnhart*, 358 F. Supp. 2d 847, 862 (E.D. Mo. 2005) ("Plaintiff's argument that the ALJ was required to consult the Grids and determine plaintiff was disabled based on the Grid, is misguided. . . . The ALJ, per SSA regulations, is not required to consult the Grid unless he determines plaintiff cannot return to his past, relevant work, and moves to Step Five of the sequential evaluation process to determine if he can engage in other jobs in the national

12

economy."). Here, the ALJ found Plaintiff not disabled at Step Four of the analysis, and he was not required to apply the grids.

Plaintiff's next argument is that the VE's testimony at Step Four did not constitute substantial evidence, because the VE's testimony that a hypothetical individual with Plaintiff's alleged environmental limitations could perform Plaintiff's past work rested on an incorrect characterization of Plaintiff's past work. At the hearing, Plaintiff's counsel did not object to the VE's characterization of Plaintiff's past work as being that of a parking lot cashier (cashier II). However, after the hearing, Plaintiff's counsel sent the ALJ a letter stating that after the hearing, he had the opportunity to check the *DOT* and found a job classification called "parking lot attendant," *DOT* No. 915.473-010. (Tr. 402). Plaintiff's counsel stated that he would think that with the appropriate job classification, Plaintiff's past work would include exposure to automobile fumes, and he would be precluded from performing that job. (Tr. 402). The ALJ did not address that issue after the hearing.

Plaintiff now renews the argument he made in the post-hearing letter to the ALJ, asserting that the work he described—which involved not only counting cash and completing reports and deposit slips, but also letting cars in and out of the parking lot and walking around to check out the cars in the parking lot to make sure everything was okay—was actually that of a parking lot attendant and not a cashier. Plaintiff argues that he could not perform that job in light of his alleged environmental limitations, stating,

> One need only imagine the extreme temperatures of a parking garage or lot in the summer and winter, and the exhaust fumes at rush hour, with many cars driving up to the parking lot attendant to pay for parking, to conclude that an individual who must avoid concentrated exposure to extreme cold and humidity and should avoid even moderate exposure to noxious fumes, odors, dusts and gases cannot maintain the job of parking lot attendant.

13

Pl.'s Br. at 8. Plaintiff further argues that the ALJ erred by failing to ask the VE to explain how a parking lot attendant could avoid exposure to extreme cold, humidity and noxious fumes, such as exhaust fumes. Plaintiff suggests that there is an unresolved conflict between the VE's testimony and the *DOT* and notes that the ALJ is required to address and resolve such conflicts. *See, e.g.*, *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014) ("If there is an apparent unresolved conflict between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given by the expert provides a basis for relying on the [VE] testimony rather than on the DOT information.'" (quoting SSR 00-4P, 2000 WL 1898704, *2-4 (S.S.A. Dec. 4, 2000)).

Plaintiff's argument is unpersuasive, for two reasons. First, Plaintiff cites no evidence— either from a VE or from the *DOT*—to contradict the testimony of the VE that was offered at the hearing. The VE's testimony that Plaintiff's past work was that of a cashier II and that a person with Plaintiff's RFC and alleged environmental limitations could perform that work as it is generally performed is uncontroverted, and it was reasonable for the ALJ to rely on it. *See, e.g.*, *Jackson v. Astrue*, No. CIV A 08-2157-CM, 2008 WL 5046378, at *7 (D. Kan. Nov. 24, 2008) (rejecting an argument that the ALJ improperly relied on the testimony of a VE; noting that "[p]laintiff and his attorney are not qualified vocational experts with the expertise to controvert the testimony of the VE" and that "plaintiff cites to no vocational authority contrary to the VE testimony").

Second, even assuming, *arguendo*, that the VE should have classified Plaintiff's past work as that of a parking lot attendant, that error was harmless, because the *DOT* and *SCO* indicate that even a person with the environmental limitations Plaintiff alleges could have performed the work of a parking lot attendant. Although Plaintiff offers speculation about the extreme temperatures,

humidity, and fumes that a parking lot attendant would be exposed to, that speculation is not supported by the *DOT* or *SCO*: like the cashier II job, the parking lot attendant job, as generally performed, does not involve exposure to extreme cold, humidity, toxic caustic chemicals, or "other env[ironmental]. cond[itions]" *DOT* No. 915.473-010, Parking-Lot Attendant, 1991 WL 687865 (4th ed. 1991). Thus, even if the ALJ should have included the environmental limitations in the RFC, and even if the VE should have characterized Plaintiff's past work as a parking lot attendant, the ALJ's determination that Plaintiff was capable of performing his past relevant work would have been the same and would have been entirely consistent with the *DOT*. The Court finds no reversible error.

V.    **CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2021.